JOHN STOICA, APPELLEE, v. SWIFT & COMPANY, APPELLANT.

FILED DECEMBER 9, 1916. No. 19524.

Master and Servant: EMPLOYERS' LIABILITY ACT: AWARD. In an action under the employers' liability act (Rev. St. 1913, ch. 35) the court may consider how far the injury will in all probability disable the plaintiff from engaging in those pursuits and occupations for which,

in the absence of the injury, he would have been qualified, and consider the health of the plaintiff and his general physical condition before the injury, as compared with his condition in these respects afterwards, and, when the proof shows a partial permanent disability, award damages for such injury in the sum of 50 *per centum* of the difference between the wages received at the time of the injury and his earning power thereafter, for the term fixed by the statute.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Gurley & Fitch,* for appellant.

*Fred W. Anheuser* and *Cornelius F. Connolly, contra.*

MORRISSEY, C. J.

This is an appeal from a judgment rendered in the district court for Douglas county in an action brought under chapter 35, Rev. St. 1913, known as the "Employers' Liability Act." As is provided by the statute, the trial was had to the court without the intervention of a jury. The court found generally in favor of the plaintiff; that he was injured while in the employ of the defendant, and is entitled to compensation under the provisions of the act; that plaintiff had been permanently, partially injured in his earning capacity by reason of impaired hearing in his right ear; that the impairment is equivalent to one-fourth of his previous normal hearing; that the plaintiff had suffered total disability for a period beginning September 10, 1915, and ending November 13, 1915; that his earning capacity prior to the time of the injury was $10.50 a week; that he is entitled to compensation at this rate for the period of his total disability, in the aggregate of $48.75; found that plaintiff had his earning capacity reduced as a direct result of the accident $5.50 a week; and that he is entitled to be compensated for permanent, partial disability for the period covered by the statute, which it calculated to be 290 5/7 weeks, at the rate of $2.75 a week, being 50 per cent. of his reduced earning capacity; also that the sum of $10 be paid to

Dr. E. C. Abbott and $50 to Dr. T. R. Mullen, to be included in and taxed as costs.

Appellant complains that the judgment is not sustained by sufficient evidence. It is undisputed, however, that plaintiff was in the employ of defendant, and suffered an accident while so employed, and is one of those properly coming within the provisions of the employers' liability act. The complaint as to the sufficiency of the evidence is directed against the extent of the injury sustained, and lack of proof of plaintiff's decreased earning capacity.

As to the extent of the injury, the evidence is so convincing that we do not deem it necessary to set it out in this opinion. While there is some conflict, we think the clear preponderance of the evidence supports plaintiff's contention that his hearing was unimpaired until after he received this blow upon the head, and that it is now impaired to at least the extent found by the trial court. One of the points which is worthy of serious consideration, however, is the failure of the plaintiff to offer proof of the loss of earning capacity by reason of his impaired hearing, and it is said that, without such proof, the court could not enter a judgment for decreased earning capacity for the 290 5/7 weeks covered by the judgment. In support of this contention is cited *International Harvester Co. v. Industrial Commission of Wisconsin*, 157 Wis. 167. The Wisconsin statute differs from ours in that it provides compensation for such percentage of the average weekly earnings of the injured employee as represents the impairment of his earning capacity "in the employment in which he was working at the time of the accident," while the statute under consideration does not limit the right of recovery to the difference between earning capacity "in the employment in which he was working at the time of the accident," but allows generally for compensation, whether engaged in the same or a different employment, if that earning capacity be impaired or reduced. At the time of the accident plaintiff was employed in one of the

packing houses belonging to defendant. From that date until the trial he had not been employed. It is said in plaintiff's brief, and not controverted, that because of his impaired hearing he could not return to his former employment. It is a matter of common knowledge, of which we think we may take judicial notice, that, other things being equal, a man without physical defects will find employment more readily than a man who is physically unsound. If his ability to obtain employment in any of the great industrial enterprises of the country is impaired, it necessarily follows that he will be compelled to find employment in the less desirable occupations and at a less remunerative wage. It is well settled that prospective damages on account of diminution of earning capacity in the future is a proper element of damage, and proof of previous physical condition and ability to labor before the accident and ability to labor after the accident is deemed sufficient to enable a jury to fix the pecuniary damage. 8 R. C. L. p. 477.

The statute contemplates a trial and judgment soon after the injury, but provides for compensation covering a term of 300 weeks. By its very provisions future loss of earnings must be estimated. If the court cannot take notice of the disability at which plaintiff, who has suffered an impairment of one of his faculties, will be placed, the very end and purpose of the statute will be defeated.

We are dealing with a comparatively new statute designed to cover a field heretofore untouched by the legislature. Consequently there are few adjudicated cases by which we may be guided. In many of the states having acts somewhat similar to our own industrial boards or commissions have been created to administer the law. The purpose seems to be to give speedy and informal hearings, and to avoid, so far as possible, the more technical forms of court procedure. We have not created a board or commission, but this work has been given to the courts. We are constrained to believe, however, that from the terms of the act it may be reasonably inferred that the

more formal procedure must give way to a simpler and more direct administration of justice, and that to hold that no recovery can be had for impaired future earnings without positive proof of the diminution of earning capacity would, in effect, nullify the act.

In *Zelinko v. Peabody,* reported in Illinois Industrial Accident Board, No. 304, July 10, 1914, found in a footnote in 5 Negligence and Compensation Cases Annotated, p. 825, the claimant had suffered a broken leg and the fracture was successfully reduced, but in the reduction of the fracture there was a shortening of the limb. The proof shows that the claimant had again resumed manual labor, although in different employment from that in which he was engaged when he received the injury, but there was proof that he had been offered his former position and might have resumed work therein at his former wage. Nevertheless the commission made an award for permanent, partial disability. In a discussion of the subject the commission say: "We are prone to believe that, even though persons familiar with one's usual employment and with the character of an injury may testify that a person so injured is not impaired in his earning capacity, yet it is impossible to conceive how one who was healthy and strong, whose limbs were perfect, having suffered a broken limb and the same being shortened thereby, is not to some extent permanently injured or impaired in his earning capacity." The same reasoning may well apply to the partial loss of hearing, and where, as in this case, the amount awarded is small and well within the terms of the statute, the judgment will be upheld.

Complaint is made of an allowance to Dr. Mullen of $50 for professional services and witness fees, and of an allowance of $10 to Dr. Abbott for the same class of service. Under the statute, the employer is liable for reasonable medical and hospital services and medicines, not in excess of $200 in value, for the first 21 days after the disability begins. There is a dispute as to whether medical services were tendered the plaintiff. The record is indefi-

nite and unsatisfactory; but, in any view we take of it, the judgment as to these items cannot be upheld. The injury occurred September 10. The trial began December 1. Dr. Mullen testified that his charge for professional services included his services up to the date of the trial, and it is not shown what he did within the first 21 days, or what he did thereafter. Dr. Abbott made an examination merely that he might qualify himself to testify as to the extent of plaintiff's injury, but does not appear to have rendered any professional service. He is entitled to the fee fixed by statute for a witness, but not for professional service. The judgment as to these two items is set aside, but the clerk in taxing costs will make the proper allowance for witness fees; otherwise the judgment of the district court is

AFFIRMED.